5-23-1294. He will be Robert Grady. I believe Mr. Mabigal? Is that correct? And Mr. Goldman? Yes. All right. I'll let you get settled in when you're ready. You may proceed to the podium. Good morning, Your Honors, Counsel, and may it please the Court. My name is Antonio Mabigal from the Office of the State Appellate Defender, appearing on behalf of Mr. Robert Grady. Now, today we're going to be addressing three arguments. Argument three, the sufficiency of the evidence. Argument four, the admissibility of the Facebook messages. And argument one, the ineffective assistance of counsel claim stemming from the severance of the charges. Now, turning to issue three, we ask this Court to reverse Mr. Grady's conviction for aggravated discharge of a firearm because the State failed to meet its burden providing sufficient evidence proving that Mr. Grady committed aggravated discharge of a firearm beyond a reasonable doubt. Now, the 14th Amendment of the United States Constitution requires the State to prove every fact necessary to constitute a defense beyond a reasonable doubt. Now, here the State was required to prove that Mr. Grady, one, knowingly or intentionally discharged a firearm, and two, in the direction of a vehicle. The evidence presented at trial falls well short of this standard. First, there was no eyewitness identification. No witnesses identified Mr. Grady as the shooter, let alone place a firearm in his hand. The State's sole eyewitness report never identified Mr. Grady despite following, witnessing the shooting and following the van used in the shooting to where the firearm was eventually recovered. And likewise, no responding officer testified to ever seeing Mr. Grady at the location of the shooting or at the location where the firearm was recovered. Second, the firearm itself doesn't connect Mr. Grady to the shooting. The gun was recovered in a location separate from where the shooting actually occurred. And there's no evidence placing Mr. Grady at either location, either at the intersection of Duncan and Bradley or at the Maple Park building where the firearm was recovered. Now, the Louis Supreme Court precedent says under People v. Condom, possession can't be inferred where the weapon is found apart from defended. We don't know where Mr. Grady was eventually arrested. There's no testimony to that in the record. But what we do know is that the firearm was recovered in a separate location to where the shooting occurred. Now, the State relied on unreliable testimony of Javon Jones and inconclusive DNA evidence. Third, Mr. Jones' testimony was inconsistent and unreliable. Even viewing intellectuals favorable to the State, he couldn't recall key details of the shooting and at times confused the incident with a prior shooting that actually occurred on August 1st. How do you get past the DNA evidence? Isn't that pretty conclusive? No, we agree that Mr. Grady's DNA was found on the recovered firearm. But DNA only proves contact and not actual use. Along with that, Mr. Grady's DNA was actually found on the gun. But what the record shows us is that other individuals' DNA was actually also found on the gun. But as I said, DNA cannot establish when the gun was handled or that Mr. Grady discharged it at the time the shooting actually occurred at the intersection of Duncan and Bradley, let alone that he fired it at a vehicle, as the State alleges in their charging history. Now, we asked this Court to look at the case Peacock v. Hartfield decision out of the First District, where the Court actually reversed the conviction based on insufficient circumstantial evidence. Even where an officer observed the defendant retrieve a firearm and heard shots fired, here the State presented even less evidence than presented in Hartfield. There was no testimony that Mr. Grady possessed the gun at the time of the offense or that he fired it on September 1, 2010, when the shooting occurred. Because the State failed to prove the essential elements of the offense, reversal is required by this Court. Now, turning to Issue 4, this Court should reverse and remand for a new trial because the trial court improperly omitted Facebook messages without proper authentication. Counsel, what do you say about the State's argument that the objection was not preserved? We disagree with that, Your Honor. We believe that trial constructs should properly preserve this. We see in the trial record where he objected to the instability of the Facebook messages. And also, he raised this issue in his motion for a new trial. We see this in the reported proceedings, pages 340-42, 516-17, and then in the motion for a new trial, in the common law record, pages 88-91. Now, the messages, People's Exhibit F1, were never properly authenticated. They were authenticated through Javon Jones' testimony, his part of the messages, but this requires two methods, the sender and the receiver. They were recovered from Mr. Jones' phone, and the State used them to connect it to Mr. Grady. But if we look at these messages, it came from a Facebook account named Guadalupe Grady. However, Mr. Jones nor Mr. Grady ever testified who actually was Guadalupe Grady, or who was the owner of the Facebook profile. Now, the State attempted to link that account to Mr. Grady through Officer Carpenter's testimony, but that testimony is insufficient. His authentication consisted of only a cursory view of a profile containing a name and photographs resembling Mr. Grady. The State did not introduce additional evidence, no IP address, no subscriber records, and no forensic linkage to actually establish that Mr. Grady controlled the Guadalupe Grady account. Now, as the Second District Court of Appeals recognized, and people we can, minimal evidence such as a name and photograph is insufficient to authenticate the social media account. If we actually look at, read that case, it resembles very closely to what happened here. It was a Facebook post with the defendant's nickname, Lorenzo Lucky Santos, and a picture resembling the defendant. That's almost exactly what we have here. We have a nickname, or a purported nickname from Mr. Grady and pictures. And that's all the State used to actually authenticate and connect it to Mr. Grady. Now, the State said that this doesn't matter. This evidence is mere accumulative because we have all this amount of other evidence. But if we actually look at the record, the State actually used, this was the primary evidence of motive that the State used and suggested that Mr. Grady was the shooter, emphasizing that they were sent shortly after the shooting. Now, finally, this Court should reverse and remand because Mr. Grady was denied the effective assistance of counsel when trial counsel failed to sever the unlawful possession of a weapon charge from the aggravated discharge. What evidence in the record shows that that decision not to sever was not strategic? Because, Your Honor, Mr. Grady didn't gain anything. There was no advantage to it. Trial counsel stipulated to this and effectively lessened the State's burden because, as the Court popularly noted, Mr. Grady's DNA evidence was found on him. Don't Illinois cases overwhelmingly recognize the decision whether or not to sever as legitimate trial strategy, regardless of how it turns out? It depends, Your Honor. It depends on whether, as this Court noted in Lacey, it depends whether the defendant actually gained a strategic advantage. Here, he didn't gain any advantage. This prior conviction probably would have never came in an aggravated discharge trial if it would have been severed. As we know, the prejudicial effect of prior convictions has on juries. This was a jury trial. So there was no advantage gained by Mr. Grady through this stipulation. Well, he didn't get an advantage because he lost. The issue is, all or nothing strategy has consistently been upheld as being strategic. Yes, Your Honor, but if we look at this, stipulating to the prior conviction, no judicial advantage was gained. Even if it was an all or nothing strategy, this effectively lessened the burden on the State to prove unlawful possession of a firearm by a felon. We stipulated to his prior conviction so we know that he's a felon. And then, as we noted, we're not disputing that Mr. Grady's DNA was found on the gun. So then the State doesn't have to do anything with the unlawful possession of a weapon charge. All they did was have to focus on the aggravated discharge of a firearm charge. Certainly, if this was separated into two different trials, like as we said in the briefing, the prior conviction probably would have never came in the trial. And for these reasons, we ask the Court to reverse Mr. Grady's conviction for aggravated discharge of a firearm. Or, in the alternative, this Court should remand for a new trial. Thank you. Any further questions? No, thank you for answering my question. All right, you'll have time to reflect. Thank you. All right. Counsel Farquhar-Kelly? And just a reminder to state your name for the record. Thank you. Thank you. Matthew Goldman from the State of Tallahassee's office on behalf of the people. May it please the Court. Counsel. I'm going to address the arguments that counsel made in the order in which he made them. I'm certainly happy to answer any questions, however, that may arise from your honors as they may come up. Starting with the claim about the sufficiency of the evidence, the defense's argument in this case analyzes the evidence in a piecemeal manner. And it explains why, individually, these things do not add up to prove the unreasonable doubt. However, taking the evidence as a whole, as this Court should, viewing the evidence as most favorable to the non-moving party, in this case the state, the evidence is quite clear that it establishes through circumstantial and direct evidence that the defendant was, in fact, the person who fired this weapon at the victim. We do have the DNA evidence, as your honor noted, that was quite strong. That established that the defendant did come into contact with the weapon. But we also- But it didn't show that he fired it. Correct. But the other evidence, as I'll explain, does show that he fired it. Defense counsel argues repeatedly that there's only one eyewitness here, but that is simply not true. There were two. The other eyewitness was the victim, Mr. Jones. And Mr. Jones, in his interview, does indicate that the defendant is the person responsible for this. He has bullet holes in his vehicle that very clearly came from this incident. He talks about people shooting at him from out of the U-Haul. That's a very specific detail that is perhaps not universally unique, but certainly a rarity. This is a situation where there were these Facebook messages that strongly corroborate that the defendant was the person who fired this weapon. And while we're on the topic of these Facebook messages, I have to address a particular factual error that the defense has made, not only in the reply brief, but here again in oral argument. This statement that was sent just after the shooting, two minutes after the shooting, was not sent by the defendant. It was sent by Mr. Jones. And that is a statement that they, as they have just stated, they agree was authentic. This is one in which Jones says to the defendant, essentially, we agreed to keep kids out of this. That's two minutes after the shooting took place. That is a clear piece of circumstantial evidence that strongly indicates that the person who is responsible for the shooting is, in fact, the defendant. This also aligns perfectly with the statement that he gives to the police, where he again expresses that he was essentially outraged that his children were put in danger by this whole shooting out of the U-Haul. And so, again, all of these things taken together show the proof beyond reasonable doubt. The additional piece of evidence that is quite strong was this prior shooting at the barbershop. That's what provides the motive for this essentially retaliatory shooting. It's true that this is described in the Facebook messages from the defendant, but this isn't the only place in which this barbershop shooting comes about. This also is discussed in the interview with Mr. Jones by the police in the prior statement. And they discuss this at trial. This is one of the things that despite Jones professing he has no memory, he can't recall, this is one of those things that he does testify about and he does recall actually taking place. And so all of these things taken together, when viewed under the correct light, does show that the jury had ample basis to conclude that the defendant was guilty beyond a reasonable doubt. Turning now to those Facebook messages, in addition to the argument that I just made regarding that particular message, two minutes after the shooting, Your Honors, this was a situation in which the objection made was clearly deficient. And the reason for that is because the objection that was made at trial was to hearsay, not to authenticity. The court had some clarifying questions about what was the basis for this objection. At any time, the defendant could have said, my objection is to the authenticity of these messages. The defendant did not do that. At any time of their post-trial motion, they could have brought up the issue of authenticity. They did not do that. The first time they bring up the issue of authenticity is here on appeal. This is not sufficient to preserve this issue. The case law is quite clear. The objection must be specific. And this presents an additional problem beyond just being nonspecific. If they just said objection and sat down, perhaps under certain circumstances the context of the objection might be obvious. Not here, where they object to hearsay. And so if the court is left with anything, it's with a misleading objection that leads the court to believe that the only basis that the defense has to object is one that's completely different and is now based on appeal. So for these reasons, Your Honors, I would argue that at minimum this is a forfeited argument. It is possibly waived due to the fact that counsel never corrected this misconception they left the court with that their only problem with it was hearsay. Your Honors, moving now to the issue regarding effective assistance of trial counsel, as Your Honors already noted, whether or not to move for severance is something that is consistently determined to be trial strategy in Illinois. Despite the fact that it did not work in this case, it is easy to imagine why this could have been a beneficial strategy for the defendant. Had they moved to sever and had they been successful in doing so, the state could have tried the unlawful possession of a weapon by a felon case first and established all of their proof related to the defendant having possessed that weapon. They could have established all of the evidence from Mr. Jones, and Mr. Jones ended up being a tricky witness. And if things did not go their way, they could have plugged all of the holes in their evidence before they came to the trial for the aggravated discharge of a firearm, and this could have been a situation in which the evidence was then strengthened for that second and worst case. Under these circumstances, it didn't work out. It's obvious that the defendant was convicted of both of these charges, and so was unsuccessful here. But just because it's unsuccessful does not mean that the trial strategy itself, as courts have repeatedly recognized, is illegitimate. For these reasons, Your Honor, we would ask that this court affirm the trial court on the verdict. And if there are no further questions for the remainder, I would simply extend the strength of my brief. Is there a question? No, thank you. Thank you very much. Thank you very much, Your Honors. Mr. Mando? Roberto? Just a couple briefings that the State mentioned in their argument. Things really don't add up in this case. The State just came up here and said there's ample direct evidence connecting Mr. Green to the aggravated discharge of firearm offense, but this case solely rests on circumstantial evidence. Again, there was no eyewitnesses. The State wants to use Javon Jones as an eyewitness, but if we look at the record and the trial transcripts, he doesn't say, I was at the scene of the shooting. He doesn't even point out and say, hey, Mr. Grady is the shooter. I saw him hold the gun. I saw him shoot in my direction of my car. And I believe the State is also mistaken with the bullet holes testimony. We believe that that testimony actually came from the prior incident of the September 1, 2020, barbershop shooting and not the August 2020 intersection shooting. Now, turning to the messages from Mr. Jones, we agree that Mr. Jones' messages were authenticated. What we take issue is the senders and the way that the State connected the sender's messages to Mr. Grady using their cursory view of the Facebook profile. As we know, I've noted in the brief, Facebook profiles every day are increasingly made, and there's a lot of fake profiles out there. I think we can agree on that. There's, without more established through cases like Kent, without more, we don't know who Guadalupe or Grady actually belonged to, if it could have been Mr. Grady or somebody purporting to be Mr. Grady. There's not any other linkage in the trial that were presented by the State. Now, turning to the severance issue, we take issue with the fact that trial counsel actually stipulated to Mr. Grady's prior conviction. The State just says a severance didn't work in this case. Well, trial counsel didn't even try. Trial counsel just went up there and presented a prior conviction stipulation and said, here, you can have this. We want the jury to know that he's a prior conviction, prior conviction for a felony. As we noted in the briefs and in argument today, this, in fact, lessened the burden for the State to prove unlawful possession of the weapon by a felon. How much less? I mean, there's DNA evidence suggesting possession. Yes. There's a method of establishing someone's a felon. So how much less was it? That's the whole question right there, Your Honor. They have the possession through DNA. Then they just need to prove that he was a convicted felon. That's the two elements required for unlawful possession of a weapon by a felon. They didn't have to prove anything else. Because trial counsel effectively proved one element for them, and they had the DNA. Is there any scenario on earth that said they wouldn't be able to establish he was a felon? If the charges were actually separated and they had two separate trials, the prior conviction would have possibly never been entered in the aggravated discharge of a firearm trial. As we know, the prejudicial effect of prior convictions has on juries. We know from people in Montgomery and the Illinois Supreme Court case, prior convictions can only come into trial with very narrow exceptions, and the state has the ability to prove that in trial. So there's no knowing if the prior conviction would actually come into trial. Those are two separate things, I'm sorry. One is less important proof is one of the arguments. The other is prejudicial effect of getting the prior conviction in the aggravated discharge of a weapon. My question had to do with lessening the burden of fate. The burden is lessened, Your Honor. They added Mr. Grady's DNA on the gun, on the trigger and on the gun itself. And then the stipulation proved that he was a prior convicted felon. Those are the two elements. I apologize, I'm apparently not asking my question very well. The state proves someone is a convicted felon by a fairly routine move. Your Honor, this was not a routine move. This was a move by trial counsel. They stipulated, an agreed stipulation by defense counsel and the state. This wasn't, the state didn't bring it up by any trial movers. Trial counsel did it, and it was agreed by the state. Again, I apologize. Absent the stipulation, is there any scenario on earth where the state would not have been able to prove he was a convicted felon? I guess there are some scenarios that the state would be able to prove that he was a convicted felon. But that's not the case here, Your Honor. And for those reasons, we ask this court to reverse Mr. Grady's conviction or an alternative map for a new trial. Any further questions? No, thank you for answering my question. All right, thank you. We will take this matter under advisement. We will issue a ruling in due course. We appreciate you. Thank you very much.